**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,     :    CASE No. 1:20-cr-00030
                          :
                          :
                          :    (Judge Jones)
           v.                   :
                          :    (Chief Magistrate Judge Schwab)
EARLIE CORBITT,           :
                          :
       Defendant.         :

**<u>MEMORANDUM</u>**
May 1, 2020

## I. Introduction.

Currently pending is Defendant Earlie Corbitt's motion for release from

pretrial detention.  Corbitt suggests that his detention hearing should be reopened

pursuant to 18 U.S.C. § 3142(f), which provides that the court may reopen a

detention hearing if there is new information that is material to whether there are

conditions of release that will reasonably assure the defendant's appearance at trial

and the safety of any other person and the community.  He also contends that the

court should release him pursuant to 18 U.S.C. § 3142(i), which provides that the

court may temporarily release a defendant in pretrial detention when such release

is necessary for preparation of the defendant's defense or for another compelling

reason.  Corbitt contends that the current COVID-19 pandemic constitutes new,

material information warranting reopening of his detention hearing and a

compelling reason warranting his release.  He also suggests that release is

necessary for the preparation of his defense.  For the reasons that follow, we will

deny Corbitt's motion.

## II.  Background and Procedural History.

On February 5, 2020, the Grand Jury returned an indictment charging

Corbitt with five counts of distribution and possession with intent to distribute

cocaine base, in violation of 21 U.S.C. § 841(a)(l). *Doc. 1*  On February 27, 2020,

Corbitt appeared before the undersigned for an initial appearance and arraignment.

After counsel was appointed to represent him, Corbitt pleaded not guilty. *Docs. 10, 11*.

The probation office interviewed Corbitt and prepared a pretrial services

report.  According to that report, Corbitt "stated he has chronic medical issues

related to a rare heart condition, sleep apnea, high blood pressure, asthma, and

bulging discs [in] his back."  He also "stated he takes Albuterol medication and

high blood pressure medications."  Corbitt also reported that he uses cannabinoids

daily.

The pretrial services report disclosed that Corbitt has a lengthy criminal

history including convictions for aggravated assault, solicitation to criminal

homicide, carrying a firearm without a license, fleeing or attempting to elude an officer, driving while operating privileges suspended, and possession of marijuana and drug paraphernalia.  The report also disclosed that Corbitt is currently awaiting trial on state charges of criminal use of a communication facility and possession with intent to deliver a controlled substance.  He also faces separate states charges of possession with intent to deliver a controlled substance, possession of a controlled substance, possession of marijuana, possession of drug paraphernalia, driving while operating privilege suspended, and driving an unregistered vehicle. At the time he was arrested for the charges at issue in this case, Corbitt was on pretrial supervision and house arrest with GPS monitoring for the state charges. Dauphin County Pretrial Services reported that although Corbitt was not charged with a violation of pretrial trial supervision, he was only "marginally compliant with GPS monitoring and incurred various infractions for unapproved leaves and locations."

After a detention hearing, we detained Corbitt concluding that he is a danger to the community.  *Doc. 17* at 2.  We directed the United States Marshal to tell the prison about Corbitt's sleep apnea.  Corbitt's trial is scheduled for July 7, 2020. *Doc. 19*.

On April 15, 2020, Corbitt, who is currently detained at the Dauphin County Prison, filed a motion for release from pretrial detention (*doc. 20*) and a brief in

support (*doc. 21*) of that motion.  He contends that given his medical condition, he

is at heightened risk from COVID-19.  He argues that the Dauphin County Prison

does not have the resources necessary to screen and test inmates, staff, and others

who enter the facility for COVID-19 and to protect him from COVID-19.  He also

suggests that restrictions on attorney-client visits will impair his ability to present a

defense.  Corbitt contends that if released, he will live in Harrisburg with Roxanne

Williams, who will act as a third-party custodian.  He also asserts that he will

submit to home confinement with location monitoring and other conditions of

release.

On April 20, 2020, the United States filed a brief in opposition to Corbitt's

motion for pretrial release.  The United States contends that Corbitt is a danger to

the community, that the Dauphin County Prison has taken steps to protect inmates

from COVID-19, and that the risk of contracting COVID-19 does not provide a

compelling reason to release Corbitt.

We held a hearing on Corbitt's motion on April 28, 2020.  At that hearing,

Corbitt testified about his medical conditions, about the conditions at the Dauphin

County Prison, and about where he would live if the court releases him.  Corbitt's

proposed third-party custodian—Roxanne Williams—also testified at the hearing.

And Corbitt's girlfriend—Tanya Jackson—testified about her attempt to take

Corbitt's CPAP (continuous positive airway pressure) machine to the Dauphin

County Prison.

## III.  Discussion.

### A.  18 U.S.C. § 3142(f).

Although Corbitt does not specifically mention 18 U.S.C. § 3142(f) in his

motion or brief, the United States construed Corbitt's motion as brought, in part,

under 3142(f), and at the hearing, Corbitt's counsel asserted that he was seeking

reconsideration of the court's detention order based on new evidence.  Thus, we

construe Corbitt's motion, in part, as a motion to reopen his detention hearing

pursuant to 18 U.S.C. § 3142(f).

"The Bail Reform Act of 1984, 18 U.S.C. §§ 3141–3150, provides a

comprehensive scheme governing pretrial-release decisions." *Reese v. Warden*

*Philadelphia FDC*, 904 F.3d 244, 247 (3d Cir. 2018).  "[T]he Act requires a

judicial officer to determine whether an arrestee shall be detained." *United States*

*v. Salerno*, 481 U.S. 739, 742 (1987) (citing 18 U.S.C. § 3141(a)).  "The

fundamental precept of the Bail Reform Act mandates the release of individuals so

long as the court can be reasonably assured the defendant does not pose a flight

risk or danger to the community." *United States v. Cox*, No. 2:19-cr-00271-RFB-

VCF, 2020 WL 1491180, at *2 (D. Nev. Mar. 27, 2020).

5

"If, after a hearing pursuant to the provisions of [18 U.S.C. § 3142(f)], the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).  But "[t]he judicial officer is not given unbridled discretion in making the detention determination." *Salerno*, 481 U.S. at 742–43.  Rather, the Act requires the judicial officer to consider: (1) the nature and circumstance of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics, including his or her "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" and whether he or she was on probation, parole, or other release pending further proceedings at the time of the offense or arrest; and (4) the danger posed to any person or the community if the defendant were released. 18 U.S.C. § 3142(g).  Further, in certain circumstances, the Act provides a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant for trial or the safety of the community. *See* 18 U.S.C. § 3142(e)(2), (3).

Here, Corbitt is seeking to reopen his detention hearing pursuant to 18

U.S.C. § 3142(f), which provides, in pertinent part:

> The hearing may be reopened, before or after a determination
> by the judicial officer, at any time before trial if the judicial
> officer finds that information exists that was not known to the
> movant at the time of the hearing and that has a material
> bearing on the issue whether there are conditions of release that
> will reasonably assure the appearance of such person as
> required and the safety of any other person and the community.

"Courts have reached different conclusions on whether the COVID-19

pandemic constitutes new information under § 3142(f)" *United States v. Bracey*,

No. 15-cr-2352-JNE-TNL, 2020 WL 1809187, at *3 (D. Minn. Apr. 9, 2020).  The

COVID-19 pandemic was not known at the time of Corbitt's detention hearing,

and, thus, it is new information.  The question, however, is whether it is material to

"whether there are conditions of release that will reasonably assure the appearance

of [Corbitt] as required and the safety of any other person and the community." 18

U.S.C. § 3142(f).  "As explained by virtually every court to address the issue,

COVID-19 does not 'in and of itself raise a change in circumstances that has a

"material bearing" on whether there are conditions of release *for this Defendant*

that will reasonably assure the safety of the community.'" *United States v.*

*McKnight*, No. CR18-16 TSZ, 2020 WL 1872412, at *2 (W.D. Wash. Apr. 15,

2020) (quoting *United States v. Dodd*, No. 20-cr-0016-NEB-HB, 2020 WL

1547419 at *2 (D. Minn. Apr. 1, 2020) (emphasis in original)).  In other words,

7

"[a] defendant's concerns that he or she is facing heightened COVID-19 risks while incarcerated do not typically factor into a § 3142(f) analysis because the risk of harm *to the defendant* does not usually bear on whether the court can fashion conditions of release that will reasonably assure that the defendant is not a risk of nonappearance or a risk of harm to any others or the community." *United States v. Calvert*, No. 19-40068-03-HLT, 2020 WL 1847754, at *2 (D. Kan. Apr. 13, 2020) (emphasis in original) (citing cases).  When addressing whether to reopen a detention hearing under § 3142(f), "courts often then turn to whether the COVID-19 pandemic alters the individualized assessment based on the factors set forth in 18 U.S.C. § 3142(g) of the Bail Reform Act." *Bracey*, 2020 WL 1809187, at *3.

Here, we previously determined that Corbitt is a danger to the community based on his specific circumstances.  And Corbitt has not shown that the COVID-19 pandemic materially changes the fact that he is a danger to the community. Further, although Corbitt may have testified about his medical conditions in more detail than he did at his detention hearing, his medical conditions and information about his medical conditions is not new evidence.  And, in any event, considering Corbitt's medical conditions does not cause us to change our view that Corbitt is a danger to the community.

In sum, given that Corbitt is charged with five counts of distribution and possession with intent to distribute cocaine base; that he has a lengthy criminal

history, including convictions for aggravated assault, solicitation to criminal homicide, carrying a firearm without a license, fleeing or attempting to elude an officer; that he is currently awaiting trial on numerous state charges including drug charges; that at the time he was arrested for the charges at issue in this case, Corbitt was on pretrial supervision for those state charges; and that he has failed to proffer evidence suggesting that he does not present a danger to the community, we decline to reopen the bail hearing pursuant to § 3142(f).

### B. 18 U.S.C. § 3142(i).

Corbitt seeks release under 18 U.S.C. § 3142(i).[1]   Section 3142 concerns release or detention of a defendant pending trial, and after setting forth what a detention order must contain, 18 U.S.C. § 3142(i) provides:

---

[1]  Recently, the question of whether COVID-19 warrants release has arisen in several different contexts in addition to pretrial release.  One such context is release of immigration detainees via a temporary restraining order in a habeas corpus case. *See e.g., Thakker, v. Doll*, No. 1:20-CV-480, 2020 WL 1671563, at *9 (M.D. Pa. Mar. 31, 2020) (granting temporary restraining order and ordering the release of numerous immigration detainees with serious medical conditions from the York County Prison, the Clinton County Correctional Facility, and the Pike County Correctional Facility).  In his brief in support of his motion, Corbitt concludes his argument for release by quoting Judge Jones's decision in *Thakker*. *Thakker*, however, concerned civil detention pending removal, not detention pending a criminal trial.  Further, here, we have previously determined that Corbitt is a danger to the community, a concern that were not at issue in *Thakker*.  For these reasons, *Thakker* is distinguishable from this case. *See United States v. McIntyre*, No. 19-cr-95, 2020 WL 1891837, at *5 n.3 (M.D. Pa. Apr. 16, 2020) (distinguishing *Thakker* on the basis that a motion under § 3142(i) is based on a

> The judicial officer may, by subsequent order, permit the
> temporary release of the person, in the custody of a United
> States marshal or another appropriate person, to the extent that
> the judicial officer determines such release to be necessary for
> preparation of the person's defense or for another compelling
> reason.

The defendant bears the burden of showing that he is entitled to release under

§ 3142(i). *Cox*, 2020 WL 1491180, at *2.


### 1.  Under the circumstance of this case, the COVID-19 pandemic is not a compelling reason for Corbitt's release.

Although "[t]he Court is mindful of the unprecedented magnitude of the

COVID-19 pandemic and the extremely serious health risks it presents, particularly

within the jail and prison setting[,]" "a defendant should not be entitled to

temporary release under § 3142(i) based solely on generalized COVID-19 fears

and speculation." *United States v. Boatwright*, No. 2:19-cr-00301-GMN-DJA,

2020 WL 1639855, at *5 (D. Nev. Apr. 2, 2020); *cf United States v. Raia*, 954 F.3d

---

different statutory framework than in *Thakker* and on the basis that "compelling
public safety considerations inspired by our finding that this defendant presented a
danger to the community were completely absent in *Thakker*").  The *Thakker*
decision cited above and cited by Corbitt involved a motion for a temporary
restraining order.  More recently, Judge Jones issued a decision on a motion for a
preliminary injunction in the *Thakker* case. *See Thakker v. Doll*, No. 1:20-CV-480,
2020 WL 2025384 (M.D. Pa. Apr. 27, 2020).  In that decision, after considering
the conditions at each prison where the moving petitioners had been detained, each
petitioner's medical condition, and each petitioner's criminal history, Judge Jones
granted the motion for a preliminary injunction as to three petitioners, but he
denied it as to seven other petitioners. *Id*. at *12.

594, 597 (3d Cir. 2020) ("But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Roeder*, No. 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020) (reversing district court's denial of defendant's motion to postpone his self-surrender date in light of the COVID-19 pandemic, but noting that "the existence of a widespread health risk is not, without more, a sufficient reason for every individual subject to a properly imposed federal sentence of imprisonment to avoid or substantially delay reporting for that sentence," and stating that it is "imperative" that the courts "continue to carefully and impartially apply the proper legal standards that govern each individual's particular request for relief").

Rather, "the court must make an individualized determination as to whether COVID-19 concerns present such a compelling reason in a particular case that temporary release is necessary." *Boatwright*, 2020 WL 1639855, at *5; *Cox*, 2020 WL 1491180, at *2 (stating that "whether temporary release under § 3142(i) is proper requires the individualized analysis of the facts of each case"); *United States v. Croley*, No. 1:19-cr-0454 (TJM), 2020 WL 1696061, at *1 (N.D.N.Y. Apr. 6, 2020) ("While courts have recently used their authority to release a defendant during this dire period upon a showing that such defendant faces a

particularized and heightened danger, or need, a generalized argument in favor of

release because of the ongoing pandemic is insufficient.").

In determining whether a defendant should be released under § 3142(i) in

light of the COVID-19 pandemic, many courts have analyzed the following

factors:

> (1) the original grounds for the defendant's pretrial detention,
> (2) the specificity of the defendant's stated COVID-19
> concerns, (3) the extent to which the proposed release plan is
> tailored to mitigate or exacerbate other COVID-19 risks to the
> defendant, and (4) the likelihood that the defendant's proposed
> release would increase COVID-19 risks to others.

*United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan.

Mar. 25, 2020); *see also Boatwright*, 2020 WL 1639855, at *5 (relying on *Clark*

and analyzing those same factors); *Dodd*, 2020 WL 1547419, at *3 (same).

Magistrate judges in this district have also found the *Clark* factors helpful. *See e.g.,*

*United States v. Andrewsh,* No. 5:19-mj-00087, 2020 WL 1904473, at *4 (M.D.

Pa. Apr. 17, 2020) (Saporito, M.J.); *McIntyre*, 2020 WL 1891837, at *4 (Carlson,

M.J.); *United States v. Neal*, No. 4:17-cr-255-1, 2020 WL 1891874, at *3 (M.D.

Pa. Apr. 16, 2020) (Arbuckle, M.J.); *United States v. Veras*, No. 3:19-cr-010, 2020

WL 1675975, at *6 (M.D. Pa. Apr. 6, 2020) (Mehalchick, M.J.).

More recently, a modified set of factors, which explicitly includes the actual

conditions in the facility where the defendant is being held, has been used by the

United Stated District Court of the Eastern District of Michigan. *See United States*

*v. McGlory*, No. 2:17-CR-20489, 2020 WL 1905719, at *2 (E.D. Mich. Apr. 17, 2020).  Those factors are:

> (1) the nature, seriousness, and specificity of the defendant's stated COVID-19 concerns (e.g., underlying medical conditions, age, etc.);
> (2) the conditions in the facility where the defendant is being held (e.g., social distancing measures, screening protocols for new prisoners, the number of prisoners diagnosed with COVID-19, and availability of appropriate medical treatment);
> (3) whether conditions of release can be imposed to mitigate COVID-19 risks to the defendant and to the community;
> (4) the original grounds for the defendant's pretrial detention.

*Id.*  Mindful that all the circumstances of a particular case must be analyzed, we conclude that the above factors, although not the exclusive factors that may be relevant in any given case, are a helpful starting point in analyzing whether release is warranted under § 3142(i).

Here, after weighing the above factors and considering the arguments presented by the parties, we conclude that release is not warranted in this case.

### a.  The nature, seriousness, and specificity of Corbitt's stated COVID-19 concerns.

Corbitt contends that his medical condition places him at a heightened risk of suffering severe illness or dying from COVID-19.  "Although most people who become sick from COVID-19 develop only mild or moderate respiratory symptoms and recover with no medical intervention, a minority of cases lead to serious illness that can result in hospitalization or death." *United States v. Ortiz*,

No. 1:18-cr-00134, 2020 WL 1904478, at *2 (M.D. Pa. Apr. 17, 2020) (citing *Q&A on Coronavirus (COVID-19): What Are the Symptoms of Coronavirus*, WORLD HEALTH ORGANIZATION, https://www.who.int/news-room/q-a-detail/q-a-coronaviruses (last visited Apr. 14, 2020)).  People with certain underlying medical conditions are at heightened risk of suffering severe illness from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/faq.html#Higher-Risk (last visited Apr. 29, 2020) (people at high risk for severe illness from COVID-19 include people 65 years and older; people of all ages with certain underlying medical conditions (particularly if not well controlled) including: chronic lung disease, moderate to severe asthma, serious heart conditions, severe obesity, diabetes, chronic kidney disease necessitating dialysis, and liver disease; and people who are immunocompromised).  "Compelling reasons may exist [for release] where the defendant's serious medical conditions warrant release." *United States v. Marte*, No. 19-cr-795 (SHS), 2020 WL 1505565, at *1 (S.D.N.Y. Mar. 30, 2020).

Corbitt testified that he has intermittent asthma, and the medical report that he submitted confirms that diagnosis.  Corbitt did not, however, testify about the frequency or severity of his intermittent asthma or about whether he requires medication for his asthma.  Corbitt also testified that he had bronchitis, but he did not say when he had that or how severe it was.  Nor did he appear to be in distress

14

during the hearing.  Corbitt further testified that he has a heart condition, which he described as one chamber of his heart being stiff.  He did not elaborate on that condition, including the severity of that condition or how that condition affects him.  He also testified that he has high blood pressure, which is generally well controlled with medication, which he is receiving at the Dauphin County Prison.

Finally, and most importantly, Corbitt testified that he has sleep apnea, that he was prescribed a CPAP machine, but the Dauphin County Prison has not allowed him to use a CPAP machine in prison.  Corbitt's girlfriend, Tanya Jackson, testified that she took Corbitt's CPAP machine to the Dauphin County Prison, and security officers there called the medical department, which said that the CPAP machine was not allowed.  Corbitt also testified that he asked multiple times for a CPAP machine at the prison, but to no avail.[2]

In sum, Corbitt's medical conditions, most importantly his untreated sleep apnea and his intermittent asthma, place Corbitt at heightened risk of serious complications should he contract COVID-19.  This fact weighs in favor of release.

**b.  The conditions at the Dauphin County Prison.**

Corbitt is concerned that he is in danger of contracting COVID-19 at the Dauphin County Prison.  His concern is not without a basis:

---

[2]  It was not clear from Corbitt's testimony that he ever made a formal request in writing for the Dauphin County Prison to allow him to use a CPAP machine.

According to Pennsylvania's Department of Health, a primary
strategy for minimizing the spread of COVID-19 is "social
distancing."  This means avoiding large gatherings of people
and keeping at least six feet away from other individuals.  It
goes without saying that prisons generally are crowded spaces
and therefore are less than conducive to the practice of social
distancing.  During this rapidly evolving public health
emergency, there are many valid concerns about the possibility
of contagion in prisons.

*Roeder*, 2020 WL 1545872, at *2 (footnotes omitted).

Corbitt testified that he is incarcerated at the Dauphin County Prison on

C Block.  According to Corbitt, C Block houses approximately 70–75 inmates.  It

has two floors of cells with approximately 15 cells on the upper tier and 15 cells on

the lower tier.  Corbitt is not, however, housed in a cell.  Rather, he is housed in

C Block's dayroom, with 14 other prisoners.  He is locked down in the dayroom

for 23 hours a day.  Corbitt testified that each inmate receives a bar of soap per

week for showering and washing.  The dayroom has only two sinks.  The dayroom

has a mop and broom.  There is also a bottle if disinfectant, when available.  Each

inmate also receives a cloth mask, which is washed twice a week.  Inmates are

without masks for approximately five hours at a time while their masks are being

washed.

In its brief, the United States details steps that the Dauphin County Prison is

taking regarding COVID-19.  But at the hearing, the United States did not proffer

any evidence of those steps.  The United States did, however, refer to the daily

reports from the United States Marshal,[3] which as of April 27, 2020, indicated that the Dauphin County Prison has five individuals in quarantine, but no positive cases of COVID-19. *See Daily COVID-19 Status for M/PA Holding Facilities—4/27/20*. U.S.MARSHALS SERVICE AUTHORITY.  The United States contends that the steps that the Dauphin County Prison is taking are working.

In sum, while not ideal, the conditions at the Dauphin County Prison do not weigh in favor of release.

### c.  Whether Conditions of Release Can be Imposed to Mitigate COVID-19 risks to Corbitt and to the Community.

Because Corbitt contends that the risk of contracting COVID-19 in the Dauphin County Prison is a compelling reason necessitating his temporary release, his "proposed temporary release plan should be tailored to mitigate [his] overall COVID-19 risks, not exacerbate them." *Clark*, 2020 WL 1446895, at *6. "Releasing someone from jail will distance him or her from the people in the jail." *United States v. Hamlin*, No. 17-cr-175-PP, 2020 WL 1703848, at *6 (E.D. Wis.

---

[3]  The court is receiving reports from the Marshal in accordance with Standing Order No. 20-5 (Mar. 23, 2020) (ordering each detention center with pretrial detainees from this district to "promptly notify the Marshal for this District of any federal detainee who is in medical isolation or quarantine at their facility for any reason, promptly upon the entry of such detainee into such status" and for the Marshal to then notify the Chief Judge and "the judicial officer who entered the Order of commitment of such status").

Apr. 8, 2020).  But "[i]t will not guarantee that he or she is distanced from people outside the jail upon release." *Id*.

Corbitt offers Roxanne Williams as a third-party custodian.  Williams, who is Corbitt's father's girlfriend, testified that Corbitt could live with her and his father in a three-bedroom mobile home in Susquehanna Township.  Williams is not employed and is home all day.  She testified that she understands the duties of a third-party custodian, and she is willing to serve in that capacity.  Williams also testified that Corbitt's father has numerous serious medical conditions, and he uses Oxygen.  According to Williams, COVID-19 is a big concern at her home, and she is taking appropriate steps, including daily cleaning and not allowing visitors to the home.

It is reasonable to assume that, if Corbitt lives with Williams and his father, as he proposes to do, he will be exposed to fewer individuals (and therefore fewer individuals who may have COVID-19) than he would if he remained in the Dauphin County Prison.  Nevertheless, Corbitt's risk of contracting COVID-19 outside the prison is tied to his compliance with the social-distancing and stay-at-home measures meant to slow the spread of the virus.  And Corbitt's "extensive criminal history establishes that he has 'been unable or unwilling to remain law-abiding for most of his adult life;' hence, the Court 'has no reason to believe that he would suddenly become compliant now.'" *United States v. Smoot*, No. 2:19-cr-

18

20, 2020 WL 1501810, at *3 (S.D. Ohio Mar. 30, 2020) (quoting *Clark*, 2020 WL 1446895, at *7).  Thus, Corbitt's lengthy criminal history casts doubt on whether he will comply with social-distancing and stay-at-home measures.  And if he does not comply with such measures, he would be at risk of contracting and then spreading the virus, including to his father, who it appears is at heightened risk of serious complications from COVID-19.  Further, "[a] defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties." *Veras*, 2020 WL 1675975, at *6.

Although Corbitt asserts that he is willing to be subject to electronic monitoring and that electronic monitoring is appropriate, it is not clear that electronic monitoring is a viable option in this case.  The court understands from the probation office that location monitoring devices are in short supply. *See also United States v Kahn*, No. 19-80169-CR, 2020 WL 1582279, at *7 (S.D. Fla. Apr. 2, 2020) ("Probation Officer Grice noted the shortage of electronic location monitoring devices."); *United States v. Feliciano*, No. 1:19-cr-00255-TWP-MJD, 2020 WL 1599693, at *2 (S.D. Ind. Apr. 1, 2020) ("The COVID-19 pandemic has reduced the availability of pretrial supervision conditions to mitigate the risk to the community and the resources of the United States Probation Office are presently limited.  The number of officers available to provide supervision and the

availability of GPS and other home detention equipment is strained.  The Probation

Office's limited resources should be reserved for the release of those in pretrial

detainment whose circumstances have truly changed—such as those who are

elderly or at high risk for the virus.").

Moreover, setting up electronic monitoring entails risks to the probation

staff. *See United States v. Aiad-Toss,* No. 4:19-cr-00521, 2020 WL 1514482, at *2

(N.D. Ohio Mar. 30, 2020) ("Moreover, releasing Defendant to home detention

and electronic monitoring creates its own risks and undue burden on pretrial

services.  Location monitoring is not a limitless resource, nor is its installation and

monitoring by United States Pretrial Services officers without risk to those

personnel (who must be trained and certified to install location monitoring) given

the current recommendations regarding implementation of social distancing.").

"The fact that a probation officer might be at risk in effectuating a defendant's

release on location monitoring may not, standing alone, be a reason not to release a

defendant." *Hamlin*, 2020 WL 1703848, at *7.  But it may be an appropriate

consideration in cases, like this one, where it is a highly questionable whether

electronic monitoring would be effective.

We are not convinced that conditions of release can be imposed that would

mitigate the risks of COVID-19 to Corbitt and to the community.  Thus, this factor

does not weigh in favor of release.

### d.  The original grounds for Corbitt's pretrial detention.

As set forth above, Corbitt has a long criminal history, and we previously determined that he is a danger to the community.  The COVID-19 pandemic does not change any of that.  Although Corbitt asserts that he is in danger given the pandemic if he remains incarcerated, such a danger generally does not bear on whether if released, he would be a flight risk or a danger to the community. *Cf. Clark*, 2020 WL 1446895, at *3 ("A defendant's concerns that he or she would face heightened COVID-19 risks if incarcerated would not typically factor into a § 3142(f) analysis, which focuses on whether the court can fashion conditions of release that will reasonably assure the defendant is not a risk of nonappearance or a risk of harm to any others or the community.  The risk of harm *to the defendant* does not usually bear on this analysis." (italics in original)).  And we cannot say that Corbitt is not a danger to the community given the offenses with which he is charged and his criminal history.

Further, although Corbitt asserts that he is willing to submit to home confinement with location monitoring, such monitoring, assuming it is available, "may offer useful information about where he is, [but] it provides little useful information about what he is doing, and the ready accessibility of smart phones and digital communication devices would make it all too easy for him to resume his involvement (directly or through confederates) in the distribution of controlled

substances without detection." *United States v. Martin*, No. CR PWG-19-140-13,

2020 WL 1274857, at *4 (D. Md. Mar. 17, 2020).

The fact that Corbitt is a danger to the community weighs against release.

COVID-19 poses a threat to all members of society, including Corbitt.  "And the

Court is sensitive to the special risks that COVID-19 poses to incarcerated

persons." *United States v. Wilson*, No. 19-cr-20112-7, 2020 WL 1543547, at *3

(E.D. Mich. Mar. 26, 2020).  "In an appropriate case, the circumstances of the

COVID-19 pandemic, and the pandemic's impact on a particular prisoner in a

particular facility, could perhaps tip the balance in favor of pretrial release." *Id*.

But Corbitt has not shown that under the circumstances he faces, the COVID-19

pandemic is a compelling reason for his release.

### 2.  Corbitt's release is not necessary for the preparation of his defense.

Corbitt also suggests that his release is necessary for the preparation of his

defense.[4]  "But there is nothing unique about his situation—as opposed to all

detained defendants who must assist in their defense within the limits of pretrial

custody—that would make temporary release for trial preparations 'necessary'

here." *United States v. Villegas*, No. 2:19-CR-568-AB, 2020 WL 1649520, at *2

(C.D. Cal. Apr. 3, 2020).  "If federal courts had to order temporary release just

---

[4]  He suggests this in his brief.  He did not mention this at his hearing.

because it would aid a defendant's ability to work with counsel, the exception in

section 3142(i) would swallow all detention orders." *Id*.  Temporary release is not

warranted "just because it would be helpful, preferable, or even ideal for a

defendant's trial preparations." *Id*.  "At a minimum, detained defendants seeking

temporary release under section 3142(i) for 'necessary' trial preparations must

show why less drastic measures—such as requests to continue the trial date

(consistent with the Speedy Trial Act) or alternative means of communication

(including in writing or by available remote conferences)—would be inadequate

for their specific defense needs." *Id.*

Here, Corbitt has not shown that his release is necessary for the preparation

of his defense.  Corbitt has not shown that the Dauphin County Prison does not

allow attorney-client visits by teleconference or phone.  And "the court is confident

that the [prison] will respect the privileged nature of the communications between

attorneys and their clients as nothing to the contrary has been brought to our

attention to cause us concern." *United States v. Mendoza*, 2020 WL 1663361, at *3

(M.D. Pa. Apr. 3, 2020).

In sum, Corbitt has not shown that the COVID-19 pandemic is a compelling

reason for his release or that his release is necessary for the preparation of his

defense.

## IV.  Order.

Based on the foregoing, Corbitt's motion for release from pretrial detention

(*doc. 20*) is **DENIED**.  An appropriate order will follow.


*S/Susan E. Schwab*
Susan E. Schwab
Chief United States Magistrate Judge